**NOT FOR PUBLICATION**

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | |
|---|---|
| PAUL R. F. SCHUMACHER,<br><br>                Plaintiff,<br><br>            v.<br><br>CHARLES BETTA, *et al.*,<br><br>                Defendants. | Civil Action No. 22-6167 (MAS) (TJB)<br><br>**MEMORANDUM OPINION** |

**SHIPP, District Judge**

This matter comes before the Court on pro se Plaintiff Paul R. F. Schumacher's ("Plaintiff") amended motion for default judgment against Defendants Charles Betta ("Betta") and Geoffrey Horn ("Horn") (collectively, "Defendants"). (ECF No 17.) Defendants did not answer the Complaint or otherwise respond to the instant motion. The Court has carefully considered the parties' submissions and decides the matter without oral argument under Local Civil Rule 78.1. For the reasons below, Plaintiff's amended motion for default judgment is denied.

**I.    BACKGROUND**

    **A.    Factual and Procedural Background**

The Complaint pleads the following facts: Capital Advance Solutions, LLC ("CAS") is a limited liability company located in Middletown, New Jersey, and is owned by Betta and Horn

equally. (*See* Compl. 1, 3, 4, ECF No. 1.) Betta is the CEO and Dan Logan ("Logan") is the CFO.[1] (*Id.* at 4.)

Plaintiff alleges that between 2015 and 2016, CAS violated the Telephone Consumer Protection Act ("TCPA"[2]) because it made at least ten telemarketing calls to Plaintiff, even though Plaintiff was on the National Do Not Call Registry. (*Id.* at 3.) Plaintiff states that CAS also violated "Texas Code 304.252"[3] because he was on the Texas Do Not Call Registry. (*Id.*) Accordingly, Plaintiff alleges that he should not have received the "automated pre-recorded calls." (*Id.*)

Plaintiff filed suit against CAS in Brazos County Court, Texas (the "State Action"[4]) for the first telemarketing call, and was granted a default judgment because CAS failed to appear. (*Id.* at 3-4.) On May 23, 2017, CAS was ordered to pay $2,000 plus 5.00% interest, with costs of $323.42. (*Id.* at 4; State Action J.) Plaintiff filed suit thereafter against CAS, Betta, and Logan[5] in the Southern District of Texas (the "Federal Action") for ten additional calls based on the same allegations. (Federal Action J.; *see also* Compl. 4.) Betta and Logan were subsequently dismissed

---

[1] Plaintiff does not specify Horn's position at CAS, other than that he was a co-owner. (*See* Compl. 6.)

[2] Plaintiff incorrectly refers to the TCPA as the Telecommunications Consumer Protection Act in his Complaint and motion for default judgment. (*See generally* Compl.; Pl.'s Moving Br., ECF No. 17.)

[3] Plaintiff appears to have cited the incorrect code, as Plaintiff alleged that CAS violated Texas Business and Commerce Code 304.257 in a separate federal court proceeding. (Federal Action J., Ex. J-2, ECF No. 17-2.) *Compare* Texas Bus. & Com. Code § 304.252 (Enforcement by Attorney General) *with* § 304.257 (Private Action: Telemarketing Calls). In a separate state court proceeding, the final judgment filed by Plaintiff does not specify the Texas Code that Plaintiff alleged against CAS. (State Action J., Ex. J-1, ECF No. 17-1.)

[4] Plaintiff notes that he first filed a small claims case in the Justice Court of Brazos County, Texas and was denied a default judgment. (Compl. 3.) Plaintiff states that the Brazos County Court thereafter overturned its ruling and granted a default judgment as to CAS. (*Id.*)

[5] Horn was not named as a defendant in the Federal Action, as Plaintiff seemingly did not know of Horn's involvement with CAS at the time. (Compl. 6.)

2

from the Federal Action for lack of personal jurisdiction. (*Id.*) On June 25, 2020, CAS again defaulted in the Federal Action and Plaintiff was granted $28,000 in damages plus "0.18% interest, plus costs" against CAS only. (*Id.*; Federal Action J.)

Plaintiff alleges that despite multiple attempts to collect the judgments from the State Action and the Federal Action, he never received any payment from CAS because both Betta and Horn purposely delayed and evaded proceedings to drain CAS of all funds and avoid payment. (Comp. 3-7.)

### B. The Instant Action

On October 14, 2022, Plaintiff, proceeding pro se, filed suit in this District. (*See generally id.*) In essence, Plaintiff alleges[6] that: (1) Defendants are personally liable for the State Action and the Federal Action judgments against CAS; (2) Defendants are liable under the New Jersey Uniform Fraudulent Transfer Act" ("NJUFTA"); and (3) Betta is individually liable under the TCPA and Texas telemarketing law statute, and Horn is individually liable under the TCPA. (*Id.*)

Specifically, under his first claim, Plaintiff seeks to enforce the State Action and the Federal Action judgments against CAS on Betta and Horn seemingly because they are co-owners of CAS.[7] (*Id.* at 1, 6-8.) As to his second claim, Plaintiff asserts that Betta and Horn actively "chose to delay the cases as long as possible" to "avoid paying out the judgments that they knew would come due[.]" (*Id.* at 8.) Plaintiff alleges that "[s]uch transfers *would be* violations of the [NJUFTA]" and therefore "[Betta and Horn] are jointly and severally liable for the judgements [sic] against their company, CAS . . . ." (*Id.* (emphasis added).) Lastly, and perhaps as an

---

[6] While some of Plaintiff's allegations are not entirely clear, the Court construes them in a light most favorable to pro se Plaintiff. *See Holley v. Dep't of Veteran Affs.*, 165 F.3d 244, 247 (3d Cir. 1999) (stating that courts have an obligation to liberally construe pro se pleadings).

[7] Logan was not named as a defendant in this action, despite being named as a defendant in the Federal Action. (Compl. 4.)

alternative to enforcing the State Action and the Federal Action against Defendants, Plaintiff asserts that Betta is "individually responsible (and therefore jointly and severally liable with CAS) under the initial complaints of TCPA and Texas telemarketing law violations[.]" (*Id.*) Plaintiff alleges that Betta should be found liable because Betta was "intimately involved in the details of the telemarketing operations" and was aware that "[CAS] was violating [the] TCPA" and Texas telemarketing law.[8] (*Id.*) As to Horn, Plaintiff avers that discovery is required to establish whether Horn also had "direct agency in the telemarketing scheme" in order to hold Horn "jointly and severally liable with . . . Betta and CAS" under the TCPA only. (*Id.* at 9.)

Neither Betta nor Horn have answered, moved, or otherwise responded to the instant Complaint. On May 19, 2023, the Honorable Tonianne J. Bongiovanni, U.S.M.J., ordered the clerk to enter default against Betta and Horn (ECF No. 11), which the Clerk entered.[9] Plaintiff filed his first motion for default judgment on May 11, 2023 (ECF No. 9), which this Court initially denied without prejudice because Plaintiff failed to plead that the Court had subject matter jurisdiction over the action. (Mem. Order 3 ("Plaintiff does not provide a basis for subject matter jurisdiction in his Complaint or his [m]otion for [d]efault [j]udgment, and thus there is nothing in pro se Plaintiff's pleadings to liberally construe." (citation omitted)).) On November 20, 2023, Plaintiff filed an amended motion for default judgment. (ECF No. 17.) Defendants once again did not respond.

---

[8] Plaintiff states that in a deposition taken for a prior superior court lawsuit against CAS in King County, Washington, Betta admitted to his involvement in the calls, such as selecting which states would be targeted and writing the script used for the calls. (Compl. 7.)

[9] Since initiating the instant suit, Plaintiff attempted to serve Defendants multiple times, each time to no avail. (ECF Nos. 6, 7, 8; *see also* Mem. Order 1 n.1., ECF No. 14.) While Plaintiff's request for Clerk's entry of default was initially denied on the grounds that Defendants have not been properly served (ECF No. 10), the Court, upon review, determined that Plaintiff made diligent efforts to find and serve Defendants (ECF No. 11).

## II.    LEGAL STANDARD

Federal Rule of Civil Procedure[10] 55 authorizes the Court to enter default judgment "against a properly served defendant who fails to file a timely responsive pleading." *La. Counseling & Fam. Servs., Inc. v. Makrygialos, LLC*, 543 F. Supp. 2d 359, 364 (D.N.J. 2008) (citing Fed. R. Civ. P. 55(b)(2); *Anchorage Assoc. v. V.I. Bd. of Tax Rev.*, 922 F.2d 168, 177 n.9 (3d Cir. 1990)). Entry of default judgment is left to the district court's discretion. *See Hritz v. Woma Corp.*, 732 F.2d 1178, 1180 (3d Cir. 1984) (citing *Tozer v. Charles A. Krause Milling Co.*, 189 F.2d 242, 244 (3d Cir. 1951)). Because entry of default judgment does not resolve a plaintiff's claims on the merits, it is a disfavored remedy. *See Loc. 365 Pension Fund v. Kaplan Bros. Blue Flame Corp.*, No. 20-10536, 2021 WL 1976700, at *2 (D.N.J. May 18, 2021) (citing *United States v. $55,518.05 in U.S. Currency*, 728 F.2d 192, 194-95 (3d Cir. 1984)).

Three analyses guide the Court's discretion whether to enter default judgment. *See Victory's Dawn, Inc. v. Clemons*, No. 21-9744, 2022 WL 3402491, at *2 (D.N.J. Aug. 12, 2022). First, where a defendant fails to respond to a complaint, the Court must ensure that the plaintiff properly served the defendant. *See Gold Kist, Inc. v. Laurinburg Oil Co.*, 756 F.2d 14, 19 (3d Cir. 1985). Second, the Court must ensure that "the unchallenged facts" in the complaint give rise to a "legitimate cause of action." *Chanel, Inc. v. Gordashevsky*, 558 F. Supp. 2d 532, 536 (D.N.J. 2008) (quoting *DIRECTV, Inc. v. Asher*, No. 03-1969, 2006 WL 680533, at *1 (D.N.J. Mar. 14, 2006)). In conducting that assessment, the Court assumes as true all allegations in the complaint, except legal conclusions and allegations regarding damages. *See DIRECTV, Inc. v. Pepe*, 431 F.3d 162, 165 & n.6 (3d Cir. 2005) (citing *Comdyne I, Inc. v. Corbin*, 908 F.2d 1142, 1149 (3d Cir. 1990)). Third, the Court considers the following three factors to determine whether entry of a default

---

[10] All references to "Rule" or "Rules" hereinafter refer to the Federal Rules of Civil Procedure.

judgment is appropriate: "(1) whether the party seeking default will be prejudiced if default is denied, (2) whether the party subject to default has a meritorious defense, and (3) whether the party subject to default is culpable for the delay in responding." *Salins v. EMR Tech. Sols.*, No. 21-20125, 2023 WL 7386844, at *5 (D.N.J. Nov. 8, 2023) (citing *Chamberlain v. Giampapa*, 210 F.3d 154, 164 (3d Cir. 2000)).

### III.  DISCUSSION

Pursuant to Rule 55, Plaintiff moves for default judgment against Defendants. The Court considers Plaintiff's motion by analyzing each requirement below. For the reasons to be discussed, Plaintiff's motion is denied.

#### A.  Jurisdiction

Prior to entering judgment, the Court must determine whether it has subject matter jurisdiction over the claims asserted, and whether it has personal jurisdiction over the parties. *Mark IV Transp. & Logistics v. Lightning Logistics, Inc.*, 705 F. App'x 103, 108 (3d Cir. 2017) (citing *Prudential Ins. Co. of Am. v. Bramlett*, No. 08-119, 2010 WL 2696459, at *1 (D.N.J. July 6, 2010)).

Having previously denied Plaintiff's motion for default judgment because Plaintiff failed to provide the basis of this Court's subject matter jurisdiction (Mem. Order 3), the Court carefully considers Plaintiff's allegations in his amended motion for default judgment. Here, Plaintiff correctly establishes that this Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1331 because Plaintiff seeks to hold Betta and Horn individually liable under 47 U.S.C. § 227 *et seq.*, or the TCPA.[11] (Pl.'s Moving Br. 11) *See Rockefeller v. Comcast Corp.*, 424 F. App'x 82, 83 (3d

---

[11] The Court also has subject matter jurisdiction under 28 U.S.C. § 1963. (*See infra* Section III.C.a.)

6

Cir. 2011) (noting that federal question jurisdiction exists if the cause of action arises under federal law). The Court, accordingly, is satisfied that there is subject matter jurisdiction in this matter.[12]

Regarding personal jurisdiction, "[i]n the absence of an evidentiary hearing, a plaintiff's complaint need only establish a prima facie case of personal jurisdiction." *Barrett v. Tri-Coast Pharmacy, Inc.*, 518 F. Supp. 3d 810, 821 (D.N.J. 2021) (citing *Allaham v. Naddaf*, 635 F. App'x 32, 36 (3d Cir. 2015)). "The Supreme Court has defined two categories of personal jurisdiction: specific jurisdiction and general jurisdiction."[13] *Vaswani, Inc. v. Atl. Enters. Ltd.*, No. 22-137, 2023 WL 4740905, at *3 (D.N.J. July 25, 2023) (citing *Daimler AG v. Bauman*, 571 U.S. 117, 127 (2014)).

For personal jurisdiction over "an individual, the paradigm forum for the exercise of general jurisdiction is the individual's domicile." *Daimler AG*, 571 U.S. at 137. Here, Plaintiff alleges that Betta resides in New Jersey. (Compl. 1.) General jurisdiction is therefore established for Betta.

As to Horn, Plaintiff vaguely asserts that Horn's address is in Middletown, New Jersey "via his [c]ompanies." (*Id.*) Plaintiff does not provide Horn's personal address. (*Id.*) Although Plaintiff alleges that Horn "live[s] within the [C]ourt's jurisdiction" (*id.* at 2), Plaintiff's affidavit of service indicates that Plaintiff attempted to serve Horn at a home address in Brooklyn, New York. (Aff. of Service, ECF No. 19). In short, Plaintiff fails to adequately demonstrate that New Jersey is Horn's domicile. *See McCann v. Newman Irrevocable Tr.*, 458 F.3d 281, 286 (3d Cir. 2006) ("[T]he

---

[12] As to any of Plaintiff's state law claims, the Court may choose to exercise supplemental jurisdiction. *See* 28 U.S.C. § 1367(c)(3); *Kach v. Hose*, 589 F.3d 626, 650 (3d Cir. 2009) ("The decision to retain or decline jurisdiction over state-law claims is discretionary.").

[13] Plaintiff does not clarify whether he alleges that this Court has specific or general jurisdiction over Defendants. (*See generally* Compl.; Pl.'s Moving Br.)

domicile of an individual is his true, fixed and permanent home and place of habitation. It is the place to which, whenever he is absent, he has the intention of returning." (quoting *Vlandis v. Kline*, 412 U.S. 441, 454 (1973))).

As it is unclear from the face of the pleadings whether there is general jurisdiction over Horn, the Court considers in the alternative whether specific jurisdiction exists.

> For specific jurisdiction, the Supreme Court has delineated three due process requirements: (1) the plaintiff must demonstrate that the defendant purposefully directed [his] activities at the forum; (2) the litigation must arise out of or relate to at least one of those activities; and (3) if the first two requirements are satisfied, a court may consider whether the exercise of jurisdiction otherwise "comports with fair play and substantial justice."

*Barrett*, 518 F. Supp. 3d at 821(quoting *Celgene Corp. v. Distinct Pharma*, No. 17-5303, 2019 WL 1220320, at *2 (D.N.J. Mar. 13, 2019) (alteration in original) (citations omitted).

Here, Plaintiff fails to plead facts to show that this Court can exercise specific jurisdiction over Horn. Plaintiff alleges that Horn co-owned CAS, which operated in New Jersey. (Compl. 7.) In seeking to hold Horn individually liable under the TCPA, Plaintiff asserts that "[g]iven the previous lawsuits lost by CAS on [the same] subject, [Horn] had to have known that his company was operating unlawfully and he allowed it to continue doing so, to his benefit." (Pl.'s Moving Br. 7.) Yet, Horn's knowledge of alleged unlawful activity in the forum state is wholly separate from the inquiry required at this stage—whether Horn *purposefully* directed his activities *at the society or economy of New Jersey. Celgene Corp.*, 2019 WL 1220320, at *2; *J. McIntyre Mach., Ltd. v. Nicastro*, 564 U.S. 873, 884 (2011) ("The question is whether a defendant has followed a course of conduct directed at the society or economy existing within the jurisdiction of a given [forum state], so that the [forum state] has the power to subject the defendant to judgment concerning that conduct."). To the contrary, even affording the Complaint a liberal construction, Plaintiff's Complaint suggests that Horn allegedly directed his activities towards Texas, the state Plaintiff

8

was residing in at the time of the calls. (*See generally* Compl.) *See also Schumacher v. Cap. Advance Sols., LLC*, No. 18-0436, 2019 WL 1026305, at *3 (S.D. Tex. Jan. 22, 2019), *report and recommendation adopted*, No. 18-436, 2019 WL 1025894 (S.D. Tex. Mar. 4, 2019) (listing Plaintiff's address as Bryan, Texas).

In sum, Plaintiff has not pled sufficient factual allegations to suggest that this Court has general jurisdiction over Horn or that Horn's allegedly unlawful activities were indeed directed at New Jersey. *See Marin v. La Paloma Healthcare Ctr.*, 636 F. App'x 586, 588 (3d Cir. 2016) (noting plaintiff's failure to adequately demonstrate that defendant healthcare facility targeted Pennsylvania for business in order to establish personal jurisdiction). The Court, therefore, finds that it lacks personal jurisdiction over Horn and denies Plaintiff's amended motion for default judgment against Horn. The remaining analysis will pertain to Betta only.

### B. Service

For default judgment to be proper, the plaintiff must have properly served defendants. *See Gold Kist, Inc.*, 756 F.2d at 19. Pursuant to Rule 4(e)(1), an individual may be served by "following state law for serving a summons in an action brought in courts of general jurisdiction in the state where the district court is located or where service is made[.]" Fed. R. Civ. P. 4(e)(1). According to the New Jersey Court Rules, when service cannot be effectuated pursuant to New Jersey Rule 4:4-4(a), substitute modes of service are acceptable so long as a plaintiff diligently attempted to serve a defendant. N.J. Ct. R. 4:4-4(b)(1). Previously in this case, Plaintiff unsuccessfully attempted to serve Defendants multiple times. (ECF Nos. 6, 7, 8.) While service was not achieved in accordance with Rule 4(e), this Court already determined that Plaintiff made diligent efforts to serve Betta under Rule 4:4-4(a). (*See* ECF No. 11; Mem. Order 1 n.1.) The Court adopts its previous conclusions and finds that Betta was properly served.

### C. Plaintiff's Causes of Action and Betta's Meritorious Defense

Next, the Court must evaluate "whether the moving party's complaint establishes a legitimate cause of action." *La. Counseling & Fam. Servs., Inc.*, 543 F. Supp. 2d at 365. At this juncture, the Court also considers whether Betta would have a meritorious or litigable defense. *Salins*, 2023 WL 7386844, at *5 (citing *Chamberlain*, 210 F.3d at 164 (3d Cir. 2000)). The Court considers Plaintiff's three claims.

#### 1. *Enforcement of Judgment*[14]

First, Plaintiff seeks to enforce the judgments against CAS from the State Action and the Federal Action against Betta in his individual capacity in the District Court of New Jersey. (*See* Compl. 2, 8.)

#### a. Enforcement of the Federal Action

In federal courts, a money judgment entered in any district court may be registered under 28 U.S.C. § 1963 and enforced by a writ of execution under Rule 69. 28 U.S.C. § 1963 (providing the district court in which judgment is registered with the same power to enforce it that is possessed by the district court which issued judgment); Fed. R. Civ. P. 69(a)(1); *see Crystallex Int'l Corp. v. Bolivarian Republic of Venezuela*, 333 F. Supp. 3d 380, 387 (D. Del. 2018), *aff'd and remanded*, 932 F.3d 126 (3d Cir. 2019).

Under 28 U.S.C. § 1963,

> [a] judgment in an action for the recovery of money . . . entered in any . . . district court . . . may be *registered by filing a certified copy* of the judgment in any other district . . . when the judgment has

---

[14] While Plaintiff fails to cite the appropriate rule and statutes related to his claim—Rule 69 and 28 U.S.C. §§ 1963, 1738—the Court liberally construes pro se Plaintiff's Complaint. *Holley*, 165 F.3d at 247.

10

>become final by appeal or expiration of the time for appeal[15] or when ordered by the court that entered the judgment for good cause shown. . . . [A] judgment so registered shall have the same effect as a judgment of the district court of the district where registered and may be enforced in like manner.

28 U.S.C. § 1963 (emphasis added). "Registration is a simple, yet essential procedure for litigants seeking to execute upon their judgments." *Associated Bus. Tel. Sys. Corp.*, 128 F.R.D. at 65.

Without substantively delving into Plaintiff's argument that Betta should be individually liable for a judgment entered against CAS, the Court finds Plaintiff's request to be procedurally improper. Simply put, Plaintiff has failed to properly register the judgments by providing this Court with a *certified copy* of the judgments (*see* Federal Action J.) as required under 28 U.S.C. § 1963. "There likewise is no indication that the clerk of court for the [Federal Action] completed a certification form[16] or otherwise transmitted a certified copy of the judgment to this Court." *Kane Caribbean, Inc. v. Countryside Dev., Inc.*, No. 13-35, 2016 WL 492802, at *2 (D.V.I. Feb. 8, 2016) (declining to accept a "cyber" copy of a judgment because "both the plain language of the statute and the applicable registration forms continue to require certification" or an authenticated copy of a judgment). Because Plaintiff has failed to overcome this procedural hurdle, the Court's analysis stops here. *Id.* at *2-3 (declining to register the plaintiff's judgment because: (1) "[p]laintiff did not attach a certified copy of the default judgment at issue to any of its filings despite the fact that

---

[15] Here, the judgment of the Federal Action was made on June 25, 2020 (Federal Action J.) and thus the time to appeal has long expired. *Associated Bus. Tel. Sys. Corp. v. Greater Cap. Corp.*, 128 F.R.D. 63, 65 n.3 (D.N.J. 1989) (stating that the Federal Rule of Appellate Procedure allows "a judgment-debtor 30 days from the date of judgment to file a notice of appeal" (citing Fed. R. App. P. 4(a))).

[16] "There is a national court form available (AO 451) through which the clerk of court of the rendering district may certify a judgment to be registered in another district at a party's request." *Kane Caribbean, Inc.*, 2016 WL 492802, at *2 n.1 (citing http://www.uscourts.gov/forms/civil-judgment-forms/clerks-certification-judgment-be-registered-anotherdistrict)).

Section 1963 plainly requires certification," and (2) plaintiff failed to follow "the proper procedure for authenticating a judgment from another district").[17]

### b. Enforcement of the State Action

"Actions to enforce state court judgments in federal court are rare" but "[t]hey are not unknown[.]" *Mobil Cerro Negro, Ltd. v. Bolivarian Republic of Venezuela*, 863 F.3d 96, 122 (2d Cir. 2017); *Cont'l Cas. Co. v. Argentine Republic*, 893 F. Supp. 2d 747, 753 (E.D. Va. 2012) (citing 50 C.J.S. Judgments § 1368 (2012)) ("In the federal courts, 'a judgment of a state court may be sued on as a cause of action in a federal court having jurisdiction.'").

Pursuant to the Full Faith and Credit Act, 28 U.S.C. § 1738, federal courts must "give preclusive effect to state-court judgments whenever the courts of the State from which the judgments emerged would do so." *Allen v. McCurry*, 449 U.S. 90, 96 (1980) (citing 28 U.S.C. § 1738). Importantly, "the proper treatment of a state court judgment by a federal court is not

---

[17] Should Plaintiff seek to amend his Complaint and request to enforce the judgement by means of a writ of attachment, Plaintiff must also adequately allege factual assertions in accordance with Rule 69. Under Rule 69, "a district court has the authority to enforce a judgment by attaching property in accordance with the law of the state in which the district court sits." *Crystallex Int'l Corp.*, 333 F. Supp. 3d at 387 (quoting *Peterson v. Islamic Republic of Iran*, 876 F.3d 63, 89 (2d Cir. 2017)); Fed. R. Civ. P. 69(a)(1) ("The procedure on execution . . . must accord with the procedure of the state where the court is located, but a federal statute governs to the extent it applies."). Under New Jersey law, a writ of attachment may issue where: "(1) there is a probability that final judgment will be rendered in favor of the plaintiff; (2) there are statutory grounds for issuance of the writ; and (3) there is real or personal property of the defendant at a specific location within this State with is subject to attachment." *Marsellis-Warner Corp. v. Rabens*, 51 F. Supp. 2d 508, 536 (D.N.J. 1999) (citing N.J.S.A. 4:60-5(a)). Notably, "writ of attachment is an extraordinary remedy" because it is "for the collection of an ordinary debt by seizure of the property of the debtor." *Id.* (quoting *Wolfson v. Bonello*, 637 A.2d 173, 180 (N.J. Super. Ct. App. Div. 1994)); *see Scaba v. Jetsmarter, Inc.*, No. 18-17262, 2019 WL 3947510, at *8 (D.N.J. Aug. 21, 2019) (citations omitted) (denying plaintiffs' application for a writ of attachment because plaintiffs conceded that they were not aware whether there were any assets of defendant in the State of New Jersey that could be attached); *Shabazz v. Stevens*, No. 18-2088, 2019 WL 2177567, at *2 (D.N.J. May 19, 2019) (dismissing pro se plaintiff's complaint requesting writ of attachment in part because "he [did] not offer any specific facts to support a finding that he meets any of the three elements required under New Jersey law").

recognition, . . . but enforcement." *Cont'l Cas. Co.*, 893 F. Supp. 2d at 753 ("Unlike state courts that have domestication procedures, there is no procedure in the federal courts for the recognition or confirmation of state court judgments."); *Villoldo v. Republic of Cuba*, 659 F. Supp. 3d 1158, 1187 (D. Colo. 2023) (same). Although § 1738 does not "provide guidance as to how state court judgments may be enforced in federal court . . . federal courts generally require that a civil action be filed, with notice to the judgment creditor, before enforcing a state court judgment."[18] *Mobil Cerro Negro, Ltd.*, 863 F.3d at 122 (citations omitted); *see also* 18B Charles Alan Wright, Arthur R. Miller & Edward H. Cooper, FEDERAL PRACTICE AND PROCEDURE: JURISDICTION § 4469 (2d ed. 2002) ("The most direct consequence of applying the full faith and credit statute is that a federal court must enforce a state court judgment when an action is brought for that purpose.").

Critically, the judgment from the State Action is against CAS, not Betta. (*See* Compl. 2; State Action J.) In essence, Plaintiff asks this Court to alter the final judgment of the State Action and *then* enforce the modified judgment against an individual who was not part of the action. Pursuant to the Full Faith and Credit Act, however, "the Court cannot enter its own judgment against [the defendant] [or] upset the terms of the judgment issued by the [state] court . . . ."

---

[18] While § 1963 does not apply to state court judgments, § 1963 "does not foreclose other avenues for enforcing a state-court judgment in federal court where some independent basis for federal jurisdiction exists." *Woo v. Spackman*, 988 F.3d 47, 52 (1st Cir. 2021); *see id.* at 51 (citing Court of Appeals cases) ("It is clear beyond peradventure that [§] 1963 identifies only federal courts as registering courts, and we think it follows that the rendering court must be a federal court as well. To hold otherwise would be to ignore Congress's carefully chosen wording"); *see also generally id.* (dismissing a suit to register a New York state court judgment in the District Court for the District of Massachusetts because plaintiff failed to demonstrate the Court's subject matter jurisdiction in his pleadings); *Manichaean Cap., LLC v. SourceHOV Holdings, Inc.*, No. 20-5679, 2021 WL 276674, at *2 (S.D.N.Y. Jan. 27, 2021) (dismissing a suit to enforce a Delaware Court of Chancery judgment in the District Court for the Southern District of New York for lack of personal jurisdiction). Here, the Court has established that there is federal jurisdiction pursuant to the TCPA and § 1963, and that the Court has personal jurisdiction over Betta. The Court, therefore, considers Plaintiff's request to enforce the State Action judgment.

*Villoldo*, 659 F. Supp. 3d at 1187 (citations omitted). As articulated by another district court on the matter,

> "the relief available in [this] lawsuit is limited to enforcement of the state court judgment as provided by the law of the issuing state." *Ellenoff Grossman & Schole LPP v. Tempus Applied Sols. Holdings, Inc.*, No. 20-68, 2020 WL 4926144, at *3 (E.D. Va. Aug. 21, 2020); *cf. W.S. Frey Co. v. Precipitation Assocs. Of Am., Inc.*, 899 F. Supp. 1527, 1528 (W.D. Va. 1995) (explaining why registration of a state-court judgment, which would effectively turn the state-court judgment into a federal-court judgment, is procedurally improper); Restatement (Second) of Judgments § 18 cmt. f (1982) (explaining that after a plaintiff receives a favorable judgment, the plaintiff "cannot thereafter maintain an action on the original claim or any part thereof," but "may be able to maintain an action upon the judgment"); *Valores Mundiales, S.L. v. Bolivarian Republic of Venezuela*, No. 19-46, 2022 WL 17370242, at *18 n.8 (D.D.C. Aug. 3, 2022) (noting that the Restatement of Judgments "does not use the word 'judgment' to refer to the enforcing [court's] action." [The proceedings in the second state are instead described as an "action" on "the [first state's] judgment."])

*Villoldo*, 659 F. Supp. 3d at 1187 (cleaned up) (denying a motion for default judgment in part because plaintiff requested "entry of a new federal judgment" of a Florida state-court judgment when "the state-court judgment may only be *enforced* in [the district court]"). "In short, the proper treatment of a state court judgment by a federal court is not recognition, or registration, but enforcement. . . ." *Cont'l Cas. Co.*, 893 F. Supp. 2d at 753 (citing 50 C.J.S. Judgments § 1368 (2012)).

As such, the Court may only enforce the State Action judgment against CAS and is without authority to alter and enforce the State Action judgment against Betta. Plaintiff's enforcement claim, therefore, fails.

> 2. *Individual Liability under TCPA and Texas Code 304.257*

Second, Plaintiff seeks to hold Betta individually liable under TCPA and Texas Code 304.257. Aside from the fact that Plaintiff fails to specifically plead which of the numerous telephone calls Betta must be held liable for,[19] Plaintiff overlooks a critical hurdle.

For actions under the TCPA, a four-year statute of limitations applies. 28 U.S.C. § 1658(a); *City Select Auto Sales, Inc. v. David Randall Assocs., Inc.*, No. 11-2658, 2012 WL 426267, at *1 & n.1 (D.N.J. Feb. 7, 2012). Here, Plaintiff asserts that the relevant telemarketing calls to Plaintiff were made in 2015 and 2016. (Compl. 3.) Accordingly, Plaintiff's TCPA claims arising from 2015 and 2016 calls were time-barred as of 2020, two years before this suit commenced in 2022. (*See generally id.*) Betta, therefore, has a meritorious defense under the statute of limitations. *See, e.g.*, *Avraham v. Golden*, No. 18-11795, 2019 WL 699958, at *3 (D.N.J. Feb. 19, 2019) (considering the statute of limitations as a meritorious defense in a motion for default judgment).

Similarly, even if the Court were to exercise supplemental jurisdiction over the state claim,[20] Plaintiff's Texas Code § 304.257 claim appears to be time-barred. Under Texas law, a four-year limitations period applies in "[e]very action for which there is no express limitations period, except an action for the recovery of real property." *Ausmus v. Deutsche Bank Tr. Co. Nat. Ass'n*, No. 13-148, 2013 WL 3938515, at *2 n.2 (S.D. Tex. July 29, 2013) (quoting Tex. Civ. Prac. & Rem. Code Ann. § 16.051). Here, Plaintiff fails to identify an express limitations period that

---

[19] *See Rayford v. Amazon Logistics, Inc.*, No. 21-20591, 2022 WL 4011037, at *3 (D.N.J. Sept. 2, 2022) ("[T]he Court need not speculate as [p]laintiff, even pro se, bears the burden of adequate pleading.")

[20] *See, e.g.*, 28 U.S.C. § 1367(c)(3); *United Mine Workers of Am. v. Gibbs*, 383 U.S. 715, 726 (1966) ("[Supplemental] jurisdiction is a doctrine of discretion, not of plaintiff's right.").

applies to § 304.257 or § 304.052[21] that would make Plaintiff's claim, arising from actions in 2015 and 2016, timely.

Noting that Plaintiff has not alleged any facts to support that his claims are subject to equitable tolling, the Court finds that Plaintiff's claims against Betta fail to the extent that Plaintiff attempts to raise these as new claims under the TCPA and Texas Code § 304.257.

### 3. *Individual Liability under NJUFTA*

Finally, the Court considers Plaintiff's New Jersey state law claim. Again, even if the Court were to extend supplemental jurisdiction over the state claim, Plaintiff's NJUFTA claim fails. Critically, "a fraudulent transfer claim in New Jersey under N.J. Stat. Ann. 25:2-25 has a four-year statute of limitations." *In re Zhejiang Topoint Photovoltaic Co.*, 651 B.R. 477, 489 (Bankr. D.N.J. 2023); *In re Tzanides*, 574 B.R. 489, 518 (Bankr. D.N.J. 2017) ("[A]ny claim to avoid a transfer with actual intent to hinder, delay, or defraud any creditor of the debtor must be brought 'within four years after the transfer was made or the obligation was incurred or, if later, within one year after the transfer or obligation was discovered by the claimant.'" (citations omitted)).

Here, Plaintiff alleges that "shortly after Plaintiff's initial contact with [D]efendants . . . , CAS began making significant withdrawals from its bank accounts and the amount [sic] of deposits started dropping sharply." (Compl. 6.) Notably, Plaintiff asserts that "at the end of March 2016, [Defendants] started the process of winding down one of the CAS offices."

---

[21] "Section 304.257 provides a private right of action for consumers on the Texas no-call list based on violations of Subchapter B, which includes Section 304.052." *Wass v. Amerigroup Texas, Inc.*, No. 20-445, 2020 WL 4464361, at *6 (N.D. Tex. Aug. 3, 2020); *Schumacher v. Cap. Advance Sols., LLC*, No. 18-436, 2020 WL 3474420, at *1 (S.D. Tex. June 8, 2020), *report and recommendation adopted*, No. 18-436, 2020 WL 3470505 (S.D. Tex. June 25, 2020) (Section 304.052 provides that "[a] telemarketer may not make a telemarketing call to a telephone number published on the Texas no-call list more than 60 days after the date the telephone number appears on the current list.")

16

(*Id.* at 7.) Even if the Court assumed that the fraudulent transfer at issue began on March 2016 and not any earlier, Plaintiff's NJUFTA claim is time-barred because Plaintiff commenced this action in 2022, two years after the statute of limitations expired. Again, Plaintiff has not alleged that his claims are timely or subject to equitable tolling.

In sum, the Court finds that Plaintiff's Complaint fails to establish a legitimate cause of action and his amended motion for default judgment must be denied. *La. Counseling & Fam. Servs., Inc.*, 543 F. Supp. 2d at 367.

## IV.   CONCLUSION

For the foregoing reasons, Plaintiff's amended motion for default judgment is denied. Plaintiff is afforded an opportunity to file an amended complaint that addresses the deficiencies noted in this Memorandum Opinion.[22] An appropriate Order will be entered.

MICHAEL A. SHIPP
UNITED STATES DISTRICT JUDGE

---

[22] *See Ramos v. Dermotology Grp.*, No. 19-17404, 2021 WL 4260839, at *5 (D.N.J. Sept. 20, 2021) (granting plaintiff an opportunity to file a motion to amend her complaint after denying her renewed motion for default judgment).