**NOT FOR PUBLICATION**

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | |
|---|---|
| PAUL R. SCHUMACHER,<br><br>　　　　　　　Plaintiff,<br><br>　　v.<br><br>CHARLES BETTA, *et al.*,<br><br>　　　　　　　Defendants. | Civil Action No. 22-6167 (MAS) (TJB)<br><br>**MEMORANDUM OPINION** |

**SHIPP, District Judge**

　　This matter comes before the Court on Plaintiff Paul R. Schumacher's ("Plaintiff") unopposed Renewed Third Motion for Default Judgment against Defendants Charles Betta ("Betta") and Geoffrey Horn ("Horn," and collectively with Betta, "Defendants"). (ECF No. 30.) Defendants did not answer the Amended Complaint or otherwise respond to the instant motion. The Court has carefully considered Plaintiff's submission and decides the matter without oral argument under Local Civil Rule 78.1. For the reasons below, Plaintiff's Motion is denied.

**I.　BACKGROUND[1]**

　　**A.　Factual Background**

　　Plaintiff's Amended Complaint alleges that Capital Advance Solutions, LLC ("CAS") is a New Jersey limited liability company equally owned by Defendants. (Am. Compl. 2, 9-10, ECF

---

[1] For the purposes of this unopposed default judgment motion, "'the factual allegations of the [C]omplaint, except those relating to the amount of damages, will be taken as true.'" *See DIRECTV, Inc. v. Pepe*, 431 F.3d 162, 165 n.6 (3d Cir. 2005) (quoting *Comdyne I, Inc. v. Corbin*, 908 F.2d 1142, 1149 (3d Cir. 1990)).

No. 23.) Betta is the Chief Executive Officer of CAS. (*Id.* at 6.) Plaintiff identified an individual named Dan Logan ("Logan") as the Chief Financial Officer of CAS (*id.* at 7) but did not identify Horn's role in the organization (*see generally id.*). Plaintiff alleges that between 2015 and 2016, CAS was "responsible for at least [ten] telemarking calls to Plaintiff[,]" even though Plaintiff's phone numbers were on the Texas State and National Do Not Call registries at the time. (*Id.* at 4-5.) Plaintiff alleges that his receipt of these "automated pre-recorded calls" was a violation of 47 U.S.C. §§ 227(b)(3) and (c)(5) and "Texas Code 304.252."[2] (*Id.* at 5.)

Plaintiff first filed suit in Texas State Court against CAS for the "first logged call." (*Id.* at 6.) Plaintiff was awarded a default judgment in that action because CAS failed to appear. (*Id.*) As a result of that default judgment, "CAS was ordered to pay $2000 plus 5% interest, [and] court costs of $323.42." (*Id.*) Plaintiff subsequently filed a case in the Southern District of Texas against Logan, Betta, and CAS for the remaining calls that were made. (*Id.* at 7.) Betta and Logan were dismissed from that action for lack of personal jurisdiction, and the court ultimately entered a default judgment against CAS, awarding Plaintiff "$28,000 in damages, at an interest rate of 0.18% interest, plus costs." (*Id.*) CAS has not yet paid either judgment. (*Id.* at 6-7.) Plaintiff alleges that he never received payment because Defendants purposefully delayed and evaded proceedings to drain CAS of all funds to avoid the payment. (*See id.* at 9-10.)

In the present case, Plaintiff identifies two "claims" and alleges that: (1) Defendants are "jointly and severally liable for the judgments against their company, CAS, due to [P]laintiff" and

---

[2] Plaintiff appears to have cited the incorrect section of the Texas Code. *Compare* Tex. Bus. & Com. Code Ann. § 304.252 ("Enforcement by Attorney General") *with, e.g.,* Tex. Bus. & Com. Code Ann. § 304.052 ("Telemarketing Call to Telephone Number on List Prohibited") *and* Tex. Bus. & Com. Code Ann. § 304.257 ("Private Action: Telemarketing Calls"). The Court moves forward with its analysis of the instant motion with the understanding that Plaintiff intended to allege a claim under § 304.052 and/or § 304.257 of the Texas Code for the purported telemarketing calls he received. (*See generally* Am. Compl.)

2

are in violation of the New Jersey Uniform Voidable Transactions Act (the "NJUVTA"), formerly known as the New Jersey Uniform Fraudulent Transfer Act ("NJUFTA"), *see* N.J. Stat. Ann. § 25:2-10, for transferring funds from CAS to avoid paying funds Defendants knew were due; and (2) Defendants are in violation of the Telephone Consumer Protection Act (the "TCPA") and Texas telemarking law because of the calls made by CAS. (*See generally* Am. Compl.)

### B.  Procedural Background

This is not Plaintiff's first motion for default judgment before the Court in this action. In October 2022, Plaintiff, proceeding *pro se*, brought the instant action. (*See generally* Compl., ECF No. 1.) In May 2023, Plaintiff moved for default judgment after Defendants failed to answer or otherwise defend themselves. (Mot. for Default J., ECF No. 9.) The Court denied Plaintiff's motion for default judgment because Plaintiff did not provide a basis for subject matter jurisdiction in the Complaint or the moving brief. (*See generally* Oct. 26, 2023 Mem. Order, ECF No. 14.) The Court provided Plaintiff an opportunity to refile his motion for default judgment stating the grounds for the Court's subject matter jurisdiction over the dispute. (*Id.* at 3.) Plaintiff subsequently filed an Amended Motion for Default Judgment (Am. Mot. for Default J., ECF No. 17), which the Court denied as to Horn for lack of personal jurisdiction and denied as to Betta because the claims appeared time barred[3] (*see generally* June 21, 2024, 2025 Mem. Op., ECF No. 20). The Court, however, gave Plaintiff an opportunity to file an amended complaint to address the deficiencies

---

[3] For actions brought under the TCPA, a four-year statute of limitations applies. 28 U.S.C. § 1658; *City Select Auto Sales, Inc. v. David Randall Assocs., Inc.*, No. 11-2658, 2012 WL 426267, at *1, *1 n.1 (D.N.J. Feb. 7, 2012). Similarly, "a fraudulent transfer claim in New Jersey under [N.J. Stat. Ann. 25:2-25] has a four-year statute of limitations." *In re Zhejiang Topoint Photovoltaic Co.*, 651 B.R. 477, 489 (Bankr. D.N.J. 2023).

3

noted in the Court's Memorandum Opinion, including to assert allegations regarding timeliness and/or equitable tolling.[4] (*See generally id.*)

Plaintiff filed the operative Amended Complaint on July 31, 2024. (*See generally* Am. Compl.) In October 2024, Plaintiff moved for a default judgment (Third Mot. for Default J., ECF No. 27), which was initially denied because Plaintiff failed to first request the Clerk's Entry of Default (*see generally* Apr. 8, 2025 Mem. Order, ECF No. 28). After requesting entry of default and the Clerk's Entry of Default, Plaintiff renewed his Third Motion for Default Judgment. (*See generally* Renewed Third Mot. for Default J., ECF No. 30.)

## II.   **LEGAL STANDARD**

Federal Rule of Civil Procedure 55[5] authorizes the Court to enter default judgment "against a properly served defendant who fails to file a timely responsive pleading." *La. Counseling & Fam. Servs., Inc. v. Makrygialos, LLC*, 543 F. Supp. 2d 359, 364 (D.N.J. 2008) (citing Fed. R. Civ. P. 55(b)(2); *Anchorage Assocs. v. V.I. Bd. of Tax Rev.*, 922 F.2d 168, 177 n.9 (3d Cir. 1990)). Entry of default judgment is left to the district court's discretion. *See Hritz v. Woma Corp.*, 732 F.2d 1178, 1180 (3d Cir. 1984). Because entry of default judgment does not resolve a plaintiff's claims on the merits, it is a disfavored remedy. *See Loc. 365 Pension Fund v. Kaplan Bros. Blue Flame Corp.*, No. 20-10536, 2021 WL 1976700, at *2 (D.N.J. May 18, 2021) (quoting *United States v. $55,518.05 in U.S. Currency*, 728 F.2d 192, 194 (3d Cir. 1984)).

---

[4] "Under the doctrine of equitable tolling, courts may 'pause' the statute of limitations clock from the time a plaintiff brought his initial action in an improper forum until it was dismissed based on such improper forum, at which point the plaintiff is aware that he filed in the incorrect forum." *Webb v. Diversegy, LLC*, No. 21-12088, 2025 WL 2418673, at *4 (D.N.J. Aug. 21, 2025) (citing *Makozy v. Dietz*, No. 20-3050, 2022 WL 17335815, at *1 (3d Cir. Nov. 30, 2022)).

[5] All references to a "Rule" or "Rules" hereinafter refer to the Federal Rules of Civil Procedure.

Three analyses guide the Court's discretion. *See Victory's Dawn, Inc. v. Clemons*, No. 21-9744, 2022 WL 3402491, at *2 (D.N.J. Aug. 12, 2022). *First*, where a defendant fails to respond to a complaint, the Court must ensure that the plaintiff properly served the defendant. *See Gold Kist, Inc. v. Laurinburg Oil Co.*, 756 F.2d 14, 19 (3d Cir. 1985). *Second*, the Court must ensure that "the unchallenged facts" in the complaint give rise to a "legitimate cause of action." *Chanel, Inc. v. Gordashevsky*, 558 F. Supp. 2d 532, 536 (D.N.J. 2008) (quoting *DIRECTV, Inc. v. Asher*, No. 03-1969, 2006 WL 680533, at *1 (D.N.J. Mar. 14, 2006)). In conducting that assessment, the Court assumes as true all allegations in the complaint, except legal conclusions and allegations regarding damages. *See DIRECTV, Inc. v. Pepe*, 431 F.3d 162, 165 & n.6 (3d Cir. 2005) (citing *Comdyne I, Inc. v. Corbin*, 908 F.2d 1142, 1149 (3d Cir. 1990)). *Third*, the Court must determine whether default judgment is appropriate by weighing three factors: "(1) whether the defaulting party has a meritorious defense; (2) the prejudice suffered by the plaintiff seeking default; and (3) the defaulting party's culpability in bringing about default." *Trs. of UFCW Loc. 152 Health & Welfare Fund v. Avon Food, Inc.*, No. 17-2178, 2018 WL 372167, at *3 (D.N.J. Jan. 11, 2018) (citing *Emcaso Ins. Co. v. Sambrick*, 834 F.2d 71, 74 (3d Cir. 1987)).

## III. DISCUSSION

The Court now turns to whether jurisdiction and service is proper, before analyzing whether Plaintiff has established a legitimate cause of action against either of the Defendants.

### A. Jurisdiction

First, the Court must address the threshold issue of whether it has both subject matter jurisdiction and personal jurisdiction over the parties. *See Mark IV Transp. & Logistics v. Lightning Logistics, Inc.*, 705 F. App'x 103, 108 (3d Cir. 2017) (citing *Prudential Ins. Co. of Am. v. Bramlett*, No. 08-119, 2010 WL 2696459, at *1 (D.N.J. July 6, 2010)). This Court previously

5

found that it had subject matter jurisdiction over this dispute pursuant to 28 U.S.C. § 1331 because Plaintiff's original Complaint sought to hold the Defendants individually liable under 47 U.S.C. § 227 *et seq.*, of the TCPA. (June 21, 2024 Mem. Order 6-7.) The Amended Complaint contains similar allegations under the TCPA (*see generally* Am. Compl.), therefore giving the Court subject matter jurisdiction over the claims raised in the Amended Complaint pursuant to 28 U.S.C. § 1331.[6]

As the Court also previously noted, it has general personal jurisdiction over Betta because he is a New Jersey resident. (Am. Compl. 1, 25; s*ee* June 21, 2024 Mem. Op. 7); *Daimler AG v. Bauman*, 571 U.S. 117, 137 (2014) ("For an individual, the paradigm forum for the exercise of general jurisdiction is the individual's domicile." (internal quotation marks and citation omitted)). Because Horn is not a New Jersey resident (*see* Am. Compl. 1), the Court does not have general jurisdiction over him and instead must consider whether it has specific jurisdiction. *See Vaswani, Inc. v. Atl. Enters. Ltd.*, No. 22-137, 2023 WL 4740905, at *3 (D.N.J. July 25, 2023) ("The Supreme Court has defined two categories of personal jurisdiction: specific jurisdiction and general jurisdiction." (citing *Daimler AG*, 571 U.S. at 127)). Specific jurisdiction requires that: "(1) the plaintiff must demonstrate that the defendant purposefully directed its activities at the forum; (2) the litigation must arise out of or relate to at least one of those activities; and (3) . . . the exercise of jurisdiction [must] otherwise 'comport[] with fair play and substantial justice.'" *Barrett v. Tri-Coast Pharmacy, Inc.*, 518 F. Supp. 3d 810, 821 (D.N.J. 2021) (quoting *Celgene Corp. v. Distinct Pharma*, No. 17-5303, 2019 WL 1220320, at *2 (D.N.J. Mar. 13, 2019)).

---

[6] The Court may also opt to exercise supplemental jurisdiction over Plaintiff's state law claims pursuant to 28 U.S.C. § 1367(c). (*See* June 21, 2024 Mem. Op. 7 n.12); *Kach v. Hose*, 589 F.3d 626, 650 (3d Cir. 2009) ("The decision to retain or decline jurisdiction over state-law claims is discretionary.").

The Court previously found that it did not have specific jurisdiction over Horn because "Horn's knowledge of alleged unlawful activity in the forum state is wholly separate from the inquiry required at this stage—whether Horn *purposefully* directed his activities *at the society or economy of New Jersey.*" (June 21, 2024 Mem. Op. 8 (emphasis in original) (first citing *Celgene Corp.*, 2019 WL 1220320, at *2; and then citing *McIntry Mach., Ltd. v. Nicastro*, 564 U.S. 873, 884 (2011)).) Plaintiff's Amended Complaint alleges that Horn "purposefully directed his activities to the forum [state]" because: (1) Horn "founded a business in this jurisdiction"; (2) the business operated in and held its bank account in this jurisdiction; (3) "[t]he TCPA violations were planned and created from this jurisdiction"; and (4) "[t]he voidable transfers (withdrawals from the New Jersey bank) to evade the judgment were done in this jurisdiction." (Am. Compl. 25.) Plaintiff's allegations, however, focus on *CAS's* contacts with the forum state, and not Horn's individual activities. (*See generally id.*) In fact, Plaintiff concedes that "Horn's direct involvement [in his individual capacity] is less known" and, as a result, "[P]laintiff can only speculate and assume that Horn also knew about and profited from the violations [alleged in the Amended Complaint] as half-owner of the company." (*Id.* at 20.) The Amended Complaint is void of allegations of Horn's individual conduct that would subject him to specific jurisdiction here. (*See generally id.*); *MoneyGram Payment Sys., Inc. v. Consorcio Oriental, S.A.*, 65 F. App'x 844, 850 (3d Cir. 2003) ("It is axiomatic that 'jurisdiction over . . . [individual] defendants does not exist simply because they are agents or employees of organizations which presumably are amendable to jurisdiction in' a particular forum." (quoting *Nicholas v. Saul Stone & Co.*, 224 F.3d 179, 184 (3d Cir. 2000))). The Court, therefore, finds that it lacks personal jurisdiction over Horn and denies Plaintiff's Renewed Third Motion for Default Judgment against Horn. The remaining analysis pertains to Betta only.

### B. Service

For default judgment against Betta to be proper, Plaintiff must have properly served Betta. *See Gold Kist*, 756 F.2d at 19. Pursuant to Rule 4(e)(1), an individual may be served by "following state law for serving a summons in an action brought in courts of general jurisdiction in the state where the district court is located or where service is made[.]" Fed. R. Civ. P. 4(e)(1). According to New Jersey Court Rules, when service cannot be effectuated pursuant to New Jersey Rule 4:4-4(a), substitute modes of service are acceptable so long as a plaintiff diligently attempted to serve the defendant. N.J. Ct. R. 4:4-4(b)(1). Here, Plaintiff's Affidavit of Service of the Amended Complaint as to Betta indicates that the process server attempted to serve Betta two different times before affixing a copy of the documents on Betta's door and sending a copy of the Amended Complaint via first class mail to Betta's address. (*See* Affidavit of Serv., ECF No. 26.) This Court previously determined that similar efforts to effect service of the original Complaint were sufficient to establish that service was proper. (*See, e.g.*, May 19, 2023 Text Order; June 21, 2024 Mem. Op. 9.) The Court, accordingly, finds that Plaintiff properly served Betta a copy of the Amended Complaint.

### C. Plaintiff has Not Established a Legitimate Cause of Action.

Next, the Court must evaluate "whether the moving party's complaint establishes a legitimate cause of action." *La. Counseling & Fam. Servs., Inc.*, 543 F. Supp. 2d at 365. The Court first turns to Plaintiff's claims under the TCPA and the Texas State law equivalent.

#### 1. *TCPA and Texas Telemarketing Law Claims*

The TCPA was enacted "to protect individual consumers from receiving intrusive and unwanted calls." *Gager v. Dell Fin. Servs.*, 727 F.3d 265, 268 (3d Cir. 2013). Among other things, the TCPA makes it unlawful for "any person within the United States" to make calls to a phone

number assigned to a "cellular telephone service" using an "automatic telephone dialing system" without the "prior consent of the called party," 47 U.S.C. § 227(b)(1), and prohibits companies from calling numbers registered on the national do not call list, 47 U.S.C. § 227(c).[7] Plaintiff alleges that Betta has violated these provisions of the TCPA and the Texas State equivalent.

The Third Circuit has noted that "there is a real question as to whether [corporate officers acting in their corporate capacity] can be held liable under the [TCPA] at all." *City Select Auto Sales Inc. v. David Randall Assocs., Inc.*, 885 F.3d 154, 159 (3d Cir. 2018); *Zelma v. Penn LLC*, No. 19-8725, 2020 WL 278763, at *3 n.6 (D.N.J. Jan. 17, 2020); *see also Cunningham v. Cap. Adv. Sols., LLC*, No. 17-13050, 2018 WL 6061405, at *5 (D.N.J. Nov. 20, 2018) ("[T]he Third Circuit expressed significant 'doubts' as to whether personal liability can attach to a corporate officer pursuant to the TCPA." (citation omitted)). "Assuming that personal-participation liability is in fact available under the TCPA, a corporation's officer may be personally liable under the [TCPA] if he had direct, personal participation in or personally authorized the conduct found to have violated the statute, and was not merely tangentially involved." *Zelma*, 2020 WL 278763, at *3 (alteration in original) (quotation marks omitted) (quoting *City Select Auto Sales*, 885 F.3d at 162). A corporate officer, therefore, may be personally liable "if he actually committed the conduct that violated the TCPA, and/or [he] actively oversaw and directed this conduct." *Id.* (alteration in original) (quotation marks omitted) (quoting *City Select Auto Sales*, 885 F.3d at 162); *see also McGee v. Halsted Fin. Servs., LLC*, No. 13-1555, 2014 WL 1203138, at *1 n.1, *2 (D. Del. Mar.

---

[7] Texas Code § 304.052 provides that "[a] telemarketer may not make a telemarketing call to a telephone number published on the Texas no-call list[.]" Tex. Bus. & Com. § 304.052. Texas Code § 304.257 provides a cause of action to consumers on the Texas no-call list who are "adversely affected by a telemarketer who calls the consumer more than once[.]" Tex. Bus. & Com. § 304.257.

19, 2014) (granting motion for default judgment and finding individual liable for TCPA violations where he "set up the automatic telephone dialing systems").

Here, to the extent that the TCPA provides a basis for filing suit against a corporate officer in his individual capacity, Plaintiff fails to adequately allege Betta's direct, personal participation in the allegedly-unlawful automatic calls. Plaintiff alleges Betta is "personally liable . . . under the TCPA for [his] role in causing the calls to . . . [P]laintiff in violation of the TCPA." (Am. Compl. 3.) Specifically, Plaintiff claims that Betta, "through [his] company [CAS]" was responsible for at least ten telemarking calls spanning from 2015 to 2016 while Plaintiff was on both the National Do Not Call registry and the Texas Do Not Call registry. (*Id.* at 4-5.) Plaintiff further alleges that in a separate case brought by another plaintiff against Betta and CAS, Betta filed an affidavit "describ[ing] in detail how he oversees and manages the details of the firm's telemarketing operations, from choosing target areas to setting scripts and call patterns." (*Id.* at 10-11, 20.) Plaintiff's allegations appear to rely solely on Betta's position as CEO and a general statement regarding his corporate responsibilities. (*See id.*) This is not enough to establish that Betta personally participated in the alleged calls or that Betta actively oversaw and specifically directed the calls take place.[8] *See Zelma*, 2020 WL 278763, at *4 (rejecting "extrapolation" that defendant's position as co-founder and CEO showed personal involvement in unlawful conduct); *Cunningham*, 2018 WL 6061405, at *5 (finding plaintiff's general allegations that the individual defendants "authorized, oversaw[,] and directed the challenged telemarketing calls, based solely upon their

---

[8] Plaintiff also does not allege that Betta was the telemarketer, a requirement under the applicable Texas Code sections. *See, e.g.*, Tex. Bus. & Com. § 304.052 ("A *telemarketer* may not make a telemarketing call to a telephone number published on the Texas no-call list[.]" (emphasis added)).

10

status as corporate officials" failed to demonstrate that individual defendants were more than "tangentially involved" with the calls (internal quotation marks omitted)).

The Court finds that Plaintiff has not established a legitimate cause of action against Betta under the TCPA or the relevant Texas Code sections.[9] *See La. Counseling & Fam. Servs., Inc.*, 543 F. Supp. 2d at 365.

### 2.    *NJUVTA Claim*

Under § 25:2-25 of the NJUVTA,

> [a] transfer made or obligation incurred by a debtor is voidable as to a creditor . . . if the debtor made the transfer or incurred the obligation[ w]ith the intent to hinder, delay, or defraud any creditor of the debtor; or (2) [w]ithout receiving a reasonably equivalent value in exchange for the transfer or obligation, and the debtor[] . . . [i]ntended to incur, or believed or reasonably should have believed that the debtor would incur, debts beyond the debtor's ability to pay as they become due.

N.J. Stat. Ann. § 25:2-25(a)(1)-(2). A creditor may obtain "[a]voidance of the transfer or obligation to the extent necessary to satisfy the creditor's claim." *Id.* § 25:2-29. In the instance where the transfer is voidable in an action by a creditor, a judgment may be entered against "[t]he first transferee of the asset to the person for whose benefit the transfer was made[.]" *Id.* § 25:2-30(b).

---

[9] Even if the Court found that Plaintiff stated a legitimate cause of action under the TCPA, the Court is not convinced that Betta is without a meritorious defense; namely, that the statute of limitations operates to bar Plaintiff's claims. *See Trs. of UFCW Loc. 152 Health & Welfare Fund*, 2018 WL 372167, at *3; *Avraham v. Golden*, No. 18-11795, 2019 WL 699958, at *2 (D.N.J. Feb. 19, 2019) (considering statute of limitations as a "meritorious defense"). Plaintiff admits that "[t]he timeliness argument on the TCPA claims is less clear cut" but states that "the time limit should be tolled for the TCPA action until the conclusion of the prior actions that were attempting to enforce Plaintiff's claims against [D]efendants." (Am. Compl. 31.) Plaintiff initiated the Southern District of Texas lawsuit against Betta in February 2018, which was two to three years after the purported conduct occurred. *See Schumacher v. Cap. Advance Sols.*, No. 18-436, ECF No. 1 (S.D. Tex. Feb. 13, 2018). The personal jurisdiction dispute in that case was resolved in November 2019 (Am. Compl. 32), yet Plaintiff waited until October 2022 to file the present action against Betta. Plaintiff filed this action six to seven years after the alleged conduct took place. Even excluding the approximate two years that the Southern District of Texas took, Plaintiff's claims appear untimely.

Plaintiff seeks a judgment under the NJUVTA against Betta *in his individual capacity*, but alleges that: (1) CAS is the "debtor"[10] subject to debts incurred because of the default judgments entered against it (Am. Compl. 6-7, 16); and (2) the funds from CAS were transferred to a different company, not to Betta personally (*see id.* at 12 ("[Betta] withdrew funds from the[] business account for CAS and also transferred funds from that account to [his] other business(es)[.]")). Betta is not the debtor or "first transferee of the asset." *See* N.J. Stat. Ann. §§ 25:2-21, 25:2-30(b). Plaintiff, accordingly, has not established a legitimate cause of action against Betta under the NJUVTA.[11] *See La. Counseling & Fam. Servs., Inc.*, 543 F. Supp. 2d at 365.

## IV.   CONCLUSION

For the reasons set forth herein, Plaintiff's Renewed Third Motion for Default Judgment (ECF No. 30) is denied. The Court will enter an Order consistent with this Memorandum Opinion.

                                                        /s/ Michael A. Shipp
                                                        MICHAEL A. SHIPP
                                                        UNITED STATES DISTRICT JUDGE

Dated: November 3rd, 2025

---

[10] The NJUVTA defines "debtor" as "a person who is liable on a claim." N.J. Stat. Ann. § 25:2-21.

[11] Further, "[i]n order to determine whether an actual intent to hinder or defraud existed, courts look to see whether 'badges of fraud' are present." *Jurista v. Amerinox Processing, Inc.*, 492 B.R. 707, 747 (Bankr. D.N.J. 2013) (citations omitted). Such "badges of fraud" include, among others, whether the transfer was to an insider, "[b]efore the transfer was made or obligation was incurred, the debtor had been sued or threatened with suit," and "[t]he transfer occurred shortly before or shortly after a substantial debt was incurred[.]" N.J. Stat. Ann. § 25:2-26. Here, Plaintiff alleges that he sent his initial demand letter in March 2016 "detailing exactly how [Betta] would be held accountable under the TCPA," and alleges that "deposits being made to CAS drastically declined around this same period of time." (Am. Compl. 13.) CAS, however, did not incur any debt because of the default judgments until 2020 (*id.* at 30), well after CAS and/or Betta purportedly transferred the funds. The Court is therefore skeptical that Plaintiff could satisfy the intent element of the NJUVTA claim as well.